UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY A. MORTZFIELD,                     Case No. 12-15270

             Plaintiff,                     Arthur J. Tarnow
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                        United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On November 29, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 9, 12).  Plaintiff also filed a reply in support of his motion.  (Dkt. 13).

B.    Administrative Proceedings

Plaintiff filed the instant claims on October 19, 2009 and April 5, 2011

alleging that he became disabled on April 11, 2006.  (Dkt. 7-2, Pg ID 38).  The

claims for a period of disability and disability insurance benefits were initially

disapproved by the Commissioner on June 8, 2010.  (Dkt. 7-2, Pg ID 38).  Plaintiff

requested a hearing (at which point he mentioned the later application for SSI

benefits) and on June 27, 2011, plaintiff appeared with counsel before

Administrative Law Judge (ALJ) Patrick J. MacLean, who considered the case de

novo.  In a decision dated July 28, 2011, the ALJ found that plaintiff was not

disabled.  (Dkt. 7-2, Pg ID 38-51).  Plaintiff requested a review of this decision

and on October 4, 2012, the ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[1] the Appeals Council

denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 29-34); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 17 years old on the alleged disability onset date. (Dkt. 7-2, Pg ID 40). Plaintiff had no past relevant work. (Dkt. 7-2, Pg ID 49).[2] The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 7-2, Pg ID 40). At step two, the ALJ found that plaintiff's degenerative changes of the lumbar spine, T9 compression fracture, degenerative changes of the thoracic spine, degenerative changes of bilateral knees, and mood disorder were "severe" within the meaning of the second sequential step. (Dkt. 7-2, Pg ID 41). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7-2, Pg ID 41). At step four, the ALJ found that plaintiff did not have any

---

[2]  The ALJ noted that plaintiff had two unsuccessful work attempts in 2007 and 2008 as a cook, dishwasher, and amusement park attendant. (Dkt. 7-2, Pg ID 40-41). The ALJ decision does not address, nor do the parties discuss, plaintiff's apparent return to work in 2010 doing dental equipment repairs for his uncle. (Dkt. 7-8, Pg ID 612, 616). It is not clear from the record how long this lasted, whether plaintiff still works at this job, or whether this would have constituted substantial gainful activity.

past relevant work.  (Dkt. 7-2, Pg ID 49).  The ALJ concluded that plaintiff had

the following residual functional capacity

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) except the claimant could
> never climb ladders, ropes, or scaffolds; but could
> occasionally climb ramps or stairs, balance, stoop,
> crouch, kneel, and crawl.  The claimant should avoid all
> use of moving machinery and all exposure to unprotected
> heights.  The claimant's work would be limited to
> simple, routine, and repetitive tasks.

(Dkt. 7-2, Pg ID 43).  At step five, the ALJ denied plaintiff benefits because

plaintiff could perform a significant number of jobs available in the national

economy and was not under a disability.  (Dkt. 7-2, Pg ID 49-50).

  B. <u>Plaintiff's Claims of Error</u>

  Plaintiff contends that the ALJ erred in his evaluation of his traumatic brain

injury, and that the error not only resulted in an incorrect conclusion that the

condition was not "severe," but also materially impacted the ALJ's RFC

assessment to such a degree that it cannot be said to be supported by substantial

evidence.[3]  According to plaintiff, in his decision, the ALJ vaguely stated that

plaintiff's traumatic brain injury "is not considered to be a severe impairment."

(Tr. 20-21).  The ALJ provides only a one-sentence analysis that fails to properly

---

[3]  Plaintiff's first auto accident, in which he sustained most of his injuries, including his traumatic brain injury, occurred on April 11, 2006.  (Dkt. 7-7, Pg ID 330).

assess the relevant medical evidence of record. *Id.* Specifically, the ALJ states that "his own neurosurgeon expected him to make a good recovery and later treatment notes from his rehabilitation therapists showed he only had minimal deficits." Plaintiff contends that the ALJ fails to follow the "slight abnormality" standard in assessing plaintiff's traumatic brain injury and the resulting limitations. Second, plaintiff argues that the ALJ makes no meaningful discussion of the relevant medical evidence concerning plaintiff's traumatic brain injury and associated symptoms. An April 28, 2006 Psychology and Neuropsychology Assessment indicates plaintiff has: significantly slowed processing speed; immediate recall abilities for verbal information are in the low average range; delayed recall abilities for verbal and visual information are in the low average range; and impaired recall for word lists. (Tr. 288-289). Furthermore, Dr. Warschausky opined on August 16, 2006 that plaintiff's attention and processing speed were low, falling one to two standard deviations below his peers and that plaintiff would require relaxation of time constraints for completion of assignments and examinations. (Tr. 297-300). The doctor indicated that plaintiff required ongoing vocational/education counseling. (Tr. 299-300). Dr. Virginia Nelson also indicated, on October 12, 2006, that plaintiff should meet with a career-counseling specialist because "he is unlikely to be completely unaware of his slowed processing speed and would be at higher risk of failing…" (Tr. 310).

Plaintiff testified that he experiences mood swings, along with anger and agitation, and has difficulty focusing.  (Tr. 57, 59-60).

Plaintiff acknowledges that an error at Step 2 will not always require reversal, such an error may require remand if the diagnosis and other evidence in the record support a finding of functional limitations that the ALJ failed to consider or include in a later step of the sequential analysis, when considering a claimant's RFC." *Blackburn v. Astrue*, 2011 U.S. Dist. LEXIS 78259, 9-10 (S.D. Ohio 2011), adopted by 2011 U.S. Dist. LEXIS 78258 (S.D. Ohio 2011).  Here, the ALJ fails to make mention of this relevant evidence in determining that plaintiff's traumatic brain injury is a non-severe impairment.  These findings are not consistent with only a "slight abnormality."  According to plaintiff, such error is not harmless in this case, since the ALJ not only failed to properly determine that plaintiff's traumatic brain injury was severe at Step 2, but also failed to incorporate his related limitations into his RFC assessment.  Therefore, plaintiff contends that remand is required.

Plaintiff also argues that the ALJ failed to incorporate his own finding of "moderate limitations in concentration, persistence, and pace" into his hypothetical questions to the VE.  (Tr. 14, 63).  In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists in the economy, "the question[s] must accurately portray a claimant's physical and

mental impairments." *Ealy v. Comm'r Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2011).  Although a claimant's specific medical conditions need not be listed in the hypothetical question, the question must "reference all of a claimant's limitations." *Webb v. Comm'r Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Furthermore, the Sixth Circuit has held that where the VE testimony is used as substantial evidence to prove "the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects." *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994).  Failure to do so warrants a remand.  *Faucher v. Sec'y H&HS*, 17 F. 3d at 175.

According to plaintiff, the ALJ's second hypothetical question, and the one relied on to formulate his RFC assessment, included a limitation for "simple, routine, and repetitive tasks," which does not account for his moderate limitations in concentration, persistence, or pace  (Tr. 15, 63).  In his decision, the ALJ himself reaches the conclusion that plaintiff has "moderate" limitations in concentration, persistence, and pace.  (Tr. 14, 20).  The ALJ acknowledged that State agency medical consultant, Dr. Leonard C. Balunas, completed a Psychiatric Review Technique on June 3, 2010 opining that plaintiff has only "mild" limitations with: activities of daily living; social functioning; and concentration; persistence; and pace.  (Tr. 483, 485).  However, the ALJ specifically indicated

that he "assign[ed] the State agency consultant's opinion little weight with regard to the claimant's limitations in concentration, persistence, and pace; instead, finding that the claimant has moderate impairments in this area."  (Tr. 20). Further, the ALJ also evaluated the opinion of consultative examiner Dr. Hugh Bray, and determined that plaintiff "is slightly more limited in the area of maintaining attention, concentration, persistence, pace, and effort" than assessed by Dr. Bray.  (Tr. 20, 487-492).

Yet, according to plaintiff, the ALJ failed to specifically include these findings in his RFC assessment or hypothetical questions to the VE.  (Tr. 14).  In *Benton v. Comm'r Soc. Sec.*, 511 F.Supp.2d 842 (E.D. Mich. 2007), the court remanded because the ALJ's failure to include moderate deficiencies of concentration, persistence, and pace in a hypothetical questions renders the question flawed and the VE's testimony in response to a flawed hypothetical is not substantial evidence.  In *Benton*, the ALJ, rather than a physician or mental health expert, determined that the plaintiff had moderate limitations in concentration, persistence and pace.  *See Benton*, 511 F.Supp. 2d at 848.  The ALJ in this case does not rely on a physician or mental health expert's specific opinion that states plaintiff has "moderate" limitations in concentration, persistence, and pace, but instead deduces this conclusion from the medical evidence himself.  (Tr. 14, 20). According to plaintiff, the ALJ should have adequately accounted for this

limitation in his RFC assessment and incorporated it into his hypothetical question to the VE.  Without it, plaintiff contends that the VE's testimony does not constitute substantial evidence and remand is warranted by this Court.

C.    Commissioner's Motion for Summary Judgment

As an initial matter, while the ALJ determined that plaintiff had both physical and mental impairments and imposed both physical and non-exertional restrictions on the kind of work plaintiff can do, the Commissioner points out that plaintiff raises arguments regarding his mental impairments and functioning only. He has thus waived any argument regarding his physical limitations and functioning.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").  In light of plaintiff's waiver, the Commissioner has only addressed the portions of the ALJ's decision concerning plaintiff's mental functioning and the arguments plaintiff raises in opposition to that finding.

Plaintiff argues that the ALJ erred at step two of the disability determination process because, while he acknowledged that plaintiff sustained a traumatic brain injury, he did not find that this injury was a severe impairment.  According to the Commissioner, plaintiff overstates the significance of the step two finding.  It is merely a threshold finding.  An impairment is "severe" for the purposes of step two if it "significantly limit[s] . . . physical or mental ability to do basic work

activities." 20 C.F.R. § 404.1521(a).  If the ALJ finds at least one severe impairment, the claimant has met his step two burden, and the ALJ proceeds to step three of the sequential disability determination analysis.  Because one severe impairment alone is sufficient to proceed to step three, it is not relevant whether the ALJ found additional "severe" impairments at step two.  The Sixth Circuit has determined that it is unnecessary to consider a claim that the ALJ omitted a severe impairment at step two, explaining that even if present, such an omission "could not constitute reversible error" because the ALJ had found the claimant met the requirement of a severe impairment at step two.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Accordingly, the proper question is not whether the ALJ mentioned every severe impairment at step two, but whether the ALJ's conclusion that plaintiff retained the ability to perform a significant number of jobs is supported by substantial evidence.  *See Maziarz*, 837 F.2d at 247 (affirming ALJ decision because his residual functional capacity finding was supported by substantial evidence).

Plaintiff argues that the ALJ summarily explained in only one sentence the basis for not finding the brain injury severe.  The Commissioner contends that this is not so.  Rather, the ALJ cited several medical findings regarding plaintiff's brain injury that support his step two finding.  He acknowledged that plaintiff sustained this injury in April 2006, when plaintiff was involved in a motor vehicle

10

accident.  (Tr. 16, 240, 245-46, 249-51).  But, citing a follow up note from

neurosurgeon Hugh Garton, M.D., dated May 31, 2006, the ALJ noted that the

record shows this injury soon began to heal.  As the ALJ explained, Dr. Garton

observed that plaintiff initially displayed posttraumatic injury behaviors but made

"considerable" progress cognitively.  (Tr. 17, 288).  At that visit, plaintiff denied

headaches, nausea, or vomiting.  (Tr. 288).  While Dr. Garton believed plaintiff

required cognitive rehabilitation, he noted that plaintiff's mother reported that

plaintiff interacted with her "fairly normally."  (Tr. 288).  Dr. Garton noted that

speech and language functions were "fairly normal."  (Tr. 289).  He reviewed a CT

scan of plaintiff's head that showed "a relatively good recovery."  (Tr. 289).  Dr.

Garton expressed confidence that plaintiff would "make a good neurologic

recovery."  (Tr. 17, 289).

The Commissioner also points to other evidence that the ALJ cited to

support his finding.  He cited a December 2006 treatment note that indicated that

the residuals from plaintiff's head injury continued to improve.  (Tr. 17, 315-16).

According to this treatment note, neither plaintiff nor his mother reported any

effects or consequence of traumatic brain injury, including headaches, emotional

outbursts, irritability, depression, difficulty sleeping, or slow thinking relative to

plaintiff's pre-accident state.  (Tr. 17, 315).  Virginia Nelson, M.D., who authored

this note, described plaintiff's brain injury as "mild."  (Tr. 315).  She also

characterized plaintiff's deficits from this injury as "minimal," although she noted impairments in processing speed attention, vigilance, memory, verbal, and visual information. (Tr. 315). The doctor recommended that plaintiff return to school. (Tr. 315). The ALJ next noted that by the end of May 2007, plaintiff was found to be at or near his baseline with regard to his brain injury. (Tr. 17, 318). Anita Craig, D.O., noted that by this time, plaintiff had resumed driving and had re-enrolled in school. (Tr. 318). Dr. Craig discharged plaintiff and did not believe additional therapy or treatment was necessary. (Tr. 318).

To be sure, in 2010 and 2011, the Commissioner acknowledges that plaintiff reported problems concentrating. (Tr. 19). However, according to the Commissioner, this problem was not necessarily the result of plaintiff's head injury. As the ALJ noted, plaintiff received treatment for bipolar disorder and depression in 2009. (Tr. 19, 387-405). Additionally, plaintiff's report of concentration problems were contemporaneous with complaints of back pain, for which he received injections, muscle relaxants, anti-inflammatory medication, Percocet, and Vicodin. (Tr. 19, 549-68, 571-85).

The Commissioner also points out that the ALJ cited opinion evidence from examining and reviewing medical sources and these opinions support his finding that plaintiff's brain injury was not severe. Leonard C. Balunas, Ph.D., reviewed plaintiff's records and completed a Psychiatric Review Technique form, in which

he noted that plaintiff had an affective disorder but found that it was not severe.
(Tr. 20, 473).  According to Dr. Balunas, plaintiff's affective disorder was a mood
disorder secondary to traumatic brain injury.  (Tr. 476).  Dr. Balunas found that
plaintiff had only mild restrictions in activities of daily living, mild difficulties in
maintaining social functioning, and mild difficulties maintaining concentration,
persistence, or pace.  (Tr. 483).  As the ALJ also noted, Hugh Bray, Ph.D.
performed a consultative examination of plaintiff at the end of March 2010.  (Tr.
20, 487-92).  Like Dr. Balunas, Dr. Bray diagnosed mood disorder secondary to
traumatic brain injury.  (Tr. 491).  Dr. Bray found that plaintiff had adequate
contact with reality, insight, and judgment.  (Tr. 490).  Plaintiff's stream of mental
activity was talkative, responsive, logical, organized, and goal directed.  (Tr. 490).
Plaintiff was oriented to time and place.  (Tr. 490).  He could repeat seven
numbers forward and three backward, and recall two objects out of three after a
three minute delay.  (Tr. 490).  Plaintiff successfully performed serial sevens and
other tests of basic arithmetic.  (Tr. 491).  Dr. Bray described plaintiff's
concentration, attention, persistence, and effort as average.  (Tr. 491).  Dr. Bray
found only mild impairments in plaintiff's ability to interact with others; in his
ability to understand, remember, and carry out tasks; and in his ability to withstand
stress and pressure associated with day-to-day work activities.  (Tr. 492).  He
found no impairment in plaintiff's ability to maintain attention, concentration,

pace, and effort. (Tr. 492). In summary, the Commissioner contends that the ALJ cited evidence that supported his finding that plaintiff recovered from his traumatic brain injury. He further cited medical opinion evidence that showed that plaintiff had few deficits in his ability to maintain concentration, get along with others, and perform other work-related activities. Thus, the Commissioner contends that this is substantial evidence that supports the ALJ's finding that plaintiff's brain injury did not meet the regulatory criteria for severity at step two.

The Commissioner also points out that plaintiff does not address any of this evidence. Instead, he cites an April 2006 assessment that indicated significantly slowed processing speed, delayed recall abilities, and other cognitive deficits. He also cites a recommendation from Seth Warschausky, Ph.D. from August 2006, in which Dr. Warschausky suggests plaintiff would need career counseling because of his slowed processing speed. He goes on to note that Dr. Nelson concurred with this recommendation. The Commissioner contends that there are two problems with this argument. First, the referral to career counseling is not indicative of an inability to work. To the contrary, the referral suggests that two healthcare professionals believed that with the proper treatment, plaintiff would be able to return to work. Hence, the Commissioner asserts that the referral supports the ALJ's decision more than it does plaintiff's claim of disability. Second, plaintiff culls the medical record from too narrow a time period. All these records

date from 2006, the same year as the motor vehicle accident in which plaintiff

sustained the injury.  The ALJ, on the other hand, presented a longitudinal

depiction of plaintiff's health by discussing records not only from 2006 but from

every year through 2011.  The Commissioner maintains that these records show

that plaintiff's injury healed and that, as far as his brain injury went, plaintiff's

functioning returned to or near his pre-accident baseline.  Plaintiff does not

acknowledge these more recent records and corroborating medical opinions.

The most recent evidence that plaintiff cites is his hearing testimony that he

experienced mood swings, accompanied by anger, agitation, and difficulty

focusing.  According to the Commissioner, this does not rescue his attack against

the ALJ's step two finding. The ALJ largely credited this testimony.  In fact, while

the ALJ did not find plaintiff's traumatic brain injury to be a severe impairment,

he did find at step two that plaintiff's mood disorder was severe.  (Tr. 13).  This

finding greatly undermines plaintiff's argument that the ALJ underestimated the

significance of his head injury, given that Drs. Balunas and Bray found that

plaintiff's mood disorder resulted from his traumatic brain injury.  (Tr. 476, 491).

The ALJ accounted for the effects of this mood disorder by restricting plaintiff to

simple, routine, and repetitive tasks.  (Tr. 15).  Given that the ALJ addressed the

limiting effects of the mood disorder resulting from plaintiff's traumatic brain

injury, the Commissioner contends that it is of no legal moment whether the ALJ

determined at step two that the mood disorder as opposed to the traumatic brain injury was severe.  The record documents no other lasting effect of plaintiff's brain injury.  And critically, the disability determination process focuses not on diagnosis but on a claimant's residual functional capacity—that is, what a claimant can do despite his medical conditions.  *See* 20 C.F.R. § 404.1545.  Thus, the Commissioner maintains that the ALJ did not err at step two.

Next, the Commissioner argues that the ALJ properly accounted for plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. The ALJ found that plaintiff's mood disorder resulted in moderate difficulties maintaining concentration, persistence, or pace.  In making this finding, he credited plaintiff's testimony over Drs. Balunas's and Bray's opinion that plaintiff had only mild or no limitations in this functional domain.  Noting that Dr. Balunas found mild limitations in this area of functioning, the ALJ explained:

> However, the medical evidence and the claimant's testimony at the hearing establish that the claimant's mood disorder is severe; but not severe to the point that it precludes him from all work. Thus, I assign the State agency consultant's opinion little weight with regard to the claimant's limitations in concentration, persistence, and pace; instead finding that the claimant has moderate impairments in this area.

(Tr. 20).  Plaintiff does not contest the ALJ's finding of moderate difficulties. To address these moderate difficulties, the ALJ restricted plaintiff to work that

consisted of no more than simple, routine, and repetitive tasks.  (Tr. 15).  Plaintiff

takes issue with this restriction and argues that it does not go far enough to

account for the moderate difficulties that the ALJ found.  He argues that neither

the ALJ's RFC finding nor the corresponding hypothetical question posed to the

vocational expert accurately reflected plaintiff's functional limitations.  He does

not set forth with any specificity what additional restrictions he believes the ALJ

should have included, but suggests that both the RFC finding and hypothetical

question should have explicitly referenced plaintiff's moderate difficulties in this

functional domain.  *Id*.  While plaintiff cites several cases to support his claim that

the ALJ should have explicitly included these moderate difficulties in the RFC

finding and the hypothetical question, according to the Commissioner, recent

decisions in this jurisdiction refute plaintiff's assertion.  Rather, it is sufficient to

do what the ALJ did here: restrict plaintiff to simple and routine work and include

that limitation in the hypothetical question and the RFC finding.  As Magistrate

Judge Randon has observed, "the consistent trend in this District is to not remand

a case on the premise that a claimant with a 'moderate' CPP [concentration,

persistence, or pace] rating cannot perform simple, unskilled, and routine jobs."

*Brewer v. Comm'r of Soc. Sec.*, 2011 WL 7546792, at *11 (E.D. Mich. 2011)

(citing cases), adopted by 2012 WL 899341 (E.D. Mich. 2012) (Tarnow, J).

It is true that in many of these cases, courts in this jurisdiction affirmed ALJ

decisions concluding that a claimant could perform some subset of unskilled work notwithstanding a finding of moderate limitations in concentration, persistence, or pace where the medical source who found the moderate limitations also found the ability to do unskilled work.  This Court has viewed the state agency psychologist's finding that a claimant could do a subset of unskilled work despite his moderate limitations as "particularly compelling."  *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *5 (E.D. Mich. 2010); *see also Young v. Comm'r of Soc. Sec.*, 2011 WL 2601014, at *10 (E.D. Mich. 2011), adopted by 2011 WL 2600599 ("Although Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is 'capable of unskilled work.'"); *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *8 (E.D. Mich. 2011), adopted by 2011 WL 2682892 ("[T]his Court finds that Dr. Marshall's findings that Plaintiff has moderate limitations in concentration, persistence, and pace have to be considered in conjunction with his ultimate conclusion (twice reached) that, despite the concentrational limitations, Plaintiff could perform unskilled work on a 'sustain[ed] basis.'"); *Seach v. Comm'r of Soc. Sec.*, 2011 WL 1792666, at *8 (E.D. Mich. 2011), adopted by 2011 WL 1792706; *Stokes v. Comm'r of Soc. Sec.*, 2010 WL 4063886, at *11 (E.D. Mich. 2010), adopted by 2010 WL 4063744.  Plaintiff makes much of the fact that no psychologist made such findings here.  He concedes that they all found

plaintiff less limited than the ALJ found, but attempts to distinguish this case from this precedent on that basis. According to the Commissioner, this is an odd argument because in finding that plaintiff had moderate difficulties maintaining concentration, persistence, or pace, the ALJ gave plaintiff the benefit of the doubt and credited his testimony. Plaintiff now attempts to use that exercise of favorable discretion to undermine the ALJ's decision: "The 'ALJ in this case does not rely upon a physician or mental health expert's specific opinion that states Plaintiff has 'moderate' limitations in concentration, persistence, and pace, but instead deduces this conclusion from the medical evidence himself." Pl. Br. at 14. Yet, according to the Commissioner, plaintiff does not explain why, given that no physician, psychiatrist, or psychologist found that plaintiff had more than mild difficulties in this functional domain, the ALJ would have an obligation to explicitly reference the ALJ's own finding of moderate difficulties in the RFC finding and the hypothetical question when the ALJ would have had no such obligation were a mental health professional to have found such moderate difficulties. Indeed, the Commissioner points out that, given the opinions of record and the medical evidence, substantial evidence would have supported an ALJ finding of no more than mild difficulties and a correspondingly more permissive RFC finding. The Commissioner points out that plaintiff has the burden of proving his disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If Plaintiff believes that his

moderate difficulties prevent him from performing simple, routine, and repetitive tasks, he should have explained why that was the case, pointed to specific supporting evidence, and identified particular additional restrictions that the ALJ should have included.  Instead, the Commissioner asserts that he relies on a formalistic argument that, at bottom, seeks a judicial rule requiring that an ALJ automatically include particular magic words in both the hypothetical question and the RFC whenever an ALJ finds moderate difficulties maintaining concentration, persistence, or pace—at least when the medical opinions suggest lesser difficulties or limitations.

However, as Magistrate Judge Randon explained, with a record like the one in this matter, plaintiff must show why he cannot perform simple, routine, and repetitive work:  "Given Plaintiff's inconsistent record of difficulties with concentration, persistence or pace and the dearth of evidence supporting a conclusion that Plaintiff's 'moderate' CPP rating would preclude her from performing all simple work, Plaintiff has failed to show that the ALJ's conclusions were somehow flawed."  *Brewer*, 2011 WL 7546792, at *12.  The Commissioner contends that plaintiff failed to make this showing, that the ALJ sufficiently accounted for plaintiff's moderate difficulties, and that substantial evidence supports the ALJ's decision.

      D.    <u>Plaintiff's Reply</u>

In reply, plaintiff points out that all of his impairments, severe and not severe, must be considered at every step of the sequential evaluation process and therefore, the Commissioner is incorrect that since the ALJ determined that plaintiff had at least one severe impairment at Step 2, "it is not relevant whether the ALJ found additional 'severe' impairments at step two." In this case, plaintiff contends that the ALJ's failure to determine that he suffered a severe physical impairment of a traumatic brain injury constitutes error, since the ALJ neglected to consider this impairment at Step 3 of the evaluation process, and fails to properly explain how the corresponding limitations from this impairment are accounted for in his RFC assessment. (Tr. 13-21). Specially, plaintiff contends that the ALJ failed to adequately evaluate plaintiff's traumatic brain injury against Listing 12.02 for Organic Mental Disorders. (Tr. 13-14). Plaintiff acknowledges that it is well settled that this court will not overturn an ALJ's decision if the failure to articulate Step 3 findings is harmless. *See M.G. v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012). However, plaintiff maintains that remand is appropriate in cases, such as this, where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled. *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed.Appx. 411, 416 (6th Cir. 2011) ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet

this listing").  According to plaintiff, taking the entirety of the evidence and facts together, the evidence outlined in plaintiff's brief in support of his motion for summary judgment, it is unreasonable to conclude that the ALJ's articulation error was harmless, since the evidence could reasonably meet or equal the relevant listing.  Regardless of how the ALJ might ultimately decide plaintiff's claims, plaintiff contends that this court cannot say that, if the ALJ had made the required findings at Steps 2 and 3, that he necessarily would have found that plaintiff did not meet or medically equal the relevant listing.  In addition, if the ALJ does find that the evidence establishes medical equivalence, plaintiff would be presumptively entitled to benefits.  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012).  In addition, the ALJ fails to articulate how plaintiff's resulting cognitive and psychological limitations are accounted for in the RFC assessment.  (Tr. 15-21).  Plaintiff acknowledges that the Commissioner correctly points out that the ALJ discusses multiple pieces of medical evidence relevant to plaintiff's traumatic brain injury.  However, according to plaintiff, this summary does not cure the operative errors that the ALJ made.  Plaintiff contends that the ALJ's failure to properly discuss, explain, analyze, or even consider plaintiff's traumatic brain injury at Step 2 prejudiced plaintiff at Step 3 and beyond.

According to plaintiff, while the Commissioner makes the defense that "[i]f

Plaintiff believes that his moderate difficulties prevent him from performing simple, routine, and repetitive tasks, he should have explained why that was the case, pointed to specific supporting evidence, and identified particular additional restrictions that the ALJ should have included," plaintiff contends that he does not need to provide support on appeal for how the ALJ's findings of "moderate" limitations in concentration, persistence, and pace equate to an inability to work. Rather, according to plaintiff, it is the ALJ who determined that plaintiff has "moderate" limitations in concentration, persistence, and pace. (Tr. 13-140. Also, it was the ALJ that formulated an RFC assessment, which only includes a mental limitation for "simple, routine, and repetitive tasks." (Tr. 15). Plaintiff argues that the ALJ failed to explain how he reconciled his own findings with his hypothetical and RFC assessment and the absence of such an explanation leaves it to this Court to determine how "moderate" limitations in concentration, persistence, and pace are properly accounted for in the ALJ's RFC assessment. This Court should not have to guess at the ALJ's path of reasoning. *See Stacey v.Comm'r Soc. Sec.*, 451 Fed.Appx. 517, 519 (6th Cir. 2011) (noting that an "ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'", quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Accordingly, the ALJ erred by finding on one hand that plaintiff's has moderate limitation in concentration, persistence, and pace, and yet on the other hand, neglects to explain how these

limitations are accounted for in his RFC assessment and hypothetical questioning. *See Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557 (E.D. Mich. 2009).

In *Allen v. Comm'r Soc. Sec.*, 2010 WL 3905983 (E.D. Mich. 2010), report and recommendation adopted, 2010 WL 3905194 (E.D. Mich. 2010), the magistrate judge noted that the administrative record, "reviewed in its entirety, might suggest that substantial evidence would support the conclusion that Plaintiff experienced only mild or non-existent concentrational problems." *Id* at *5. The problem however, was that the ALJ determined that plaintiff experienced moderate deficiencies in concentration, persistence, and pace, and the ALJ "made no reference whatsoever to concentrational limitations in the hypothetical question." *Id*. The ALJ only included a limitation for "unskilled work." *Id*. at *6. As a result, the Magistrate Judge found that the "VE's…response…[did] not constitute substantial evidence." *Id*. The District Judge adopted the report and recommendation. *Allen*, 2010 WL 3905194, at *3 (E.D. Mich. 2010); *see also Brown v. Comm'r Soc. Sec.*, 672 F. Supp. 2d 794, 797 (E.D. Mich. 2009) (finding unpersuasive that "none of [Plaintiff's] medical or psychological treating sources suggested that Plaintiff lacked the concentration to perform unskilled one and two step work," where the ALJ determined that the claimant had "moderate" limitations with concentration, persistence, and pace, but then only limited claimant to "simple, routine, repetitive, one or two step tasks"). Because it was

the ALJ who determined that plaintiff has moderate deficiencies in concentration, persistence, and pace, plaintiff maintains that the ALJ needed to explain how this determination was accounted for in his RFC assessment and hypothetical questions to the VE.  Without such an explanation, the ALJ's RFC findings, and responses to his hypothetical questions from the VE, cannot be said to be supported by substantial evidence and remand is, therefore, appropriate.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

    The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   <u>Governing Law</u>

   The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    Listing

Plaintiff's argument regarding whether the ALJ properly found that he did not meet a listing with respect to his TBI is not included in plaintiff's initial brief. Failure to raise an issue in the the statement of errors constitutes waiver of any additional claim.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001). Plaintiff did not even mention the word "listing" in his initial brief.  Thus, the undersigned finds this argument has been waived.

In the third step of the sequential analysis to determine a  claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to meet the requirements of a listed impairment, a plaintiff bears the burden of proof that all of a Listing's criteria are met.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (a claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at Step III).  An impairment that manifests only some of the criteria in a particular

Listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at 26.  Here,

even examining plaintiff's argument as raised in the reply brief, he offers no

evidentiary analysis to support his claim that he satisfied the requirements of

Listing 12.02.  Plaintiff bears the burden of establishing that he meets a particular

listing and plaintiff's argument in this regard is not sufficiently developed such

that the undersigned can make such a determination.  Plaintiff cannot simply make

the bald claims that the ALJ erred, while leaving it to the Court to scour the record

to support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived.  It is not sufficient for a

party to mention a possible argument in a most skeletal way, leaving the court to ...

put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010

WL 882831, at *6 (W.D. Mich. 2010) ("This court need not make the lawyer's

case by scouring the party's various submissions to piece together appropriate

arguments.") (citation omitted).  In the view of the undersigned, plaintiff's

argument is wholly insufficient and undeveloped.

     2.    Step two

The undersigned agrees with the Commissioner that the ALJ cited

substantial evidence that supported his finding that plaintiff recovered from his

traumatic brain injury.  The ALJ cited medical opinion evidence that showed that

plaintiff had few deficits in his ability to maintain concentration, get along with others, and perform other work-related activities.  For example, Virginia Nelson, M.D. described plaintiff's brain injury as "mild."  (Tr. 315).  She also characterized plaintiff's deficits from this injury as "minimal," although she noted impairments in processing speed attention, vigilance, memory, verbal, and visual information.  (Tr. 315).  The doctor recommended that plaintiff return to school.  (Tr. 315).  The ALJ next noted that by the end of May 2007, plaintiff was found to be at or near his baseline with regard to his brain injury.  (Tr. 17, 318).  Anita Craig, D.O., noted that by this time, plaintiff had resumed driving and had re-enrolled in school.  (Tr. 318).  Dr. Craig discharged plaintiff and did not believe additional therapy or treatment was necessary.  (Tr. 318).  Thus, the undersigned concludes that substantial evidence supports the ALJ's finding that plaintiff's brain injury did not meet the regulatory criteria for severity at step two.

Even if the ALJ erred by failing to find one of plaintiff's claimed impairments was "severe," the omission of an impairment from the step two findings would not warrant remand because the ALJ found that plaintiff had at least one impairment that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of

Maziarz's cervical condition was irrelevant for the step two analysis). If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe. 20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). Notably, plaintiff points to no medical opinions in the record suggesting that he was more limited than as found by the ALJ. Rather, as the Commissioner points out, plaintiff relies entirely on medical records from immediately after his first accident, while ignoring all the medical records documenting his significant improvements and return to near pre-accident baseline as far as his mental and cognitive impairments.

And, as shown below, the ALJ here considered plaintiff's claimed impairments in evaluating plaintiff's residual functional capacity, and thus even if the ALJ failed to find that a condition was "severe," that failure cannot be grounds for remand. *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003) (a step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC). Specifically, the ALJ found that plaintiff's mood disorder, which was related to his traumatic brain injury, resulted in a moderate impairment in concentration,

persistence or pace.  Plaintiff does not contest this ultimate finding.  Rather, as

discussed below, plaintiff argues that the ALJ failed to properly account for this

moderate impairment in the RFC.

### 3.   Concentration, persistence, or pace

In the view of the undersigned, the heart of plaintiff's claim is whether the

ALJ properly incorporated his moderate limitation in concentration, persistence or

pace into the hypothetical question posed to the vocational expert and into the

RFC.  Here, plaintiff argues that the ALJ's limitation of plaintiff to "simple,

routine, and repetitive tasks" does not sufficiently account for the moderate

impairment in concentration, persistence, or pace.  Plaintiff does not, however,

satisfactorily explain how his moderate impairment in concentration, persistence,

or pace is not fully accounted for in this RFC.  Plaintiff argues that moderate

deficiencies in concentration, persistence, or pace suggest substantial limitations

that must be acknowledged in the hypothetical question.  *Edwards v. Barnhart*,

383 F.Supp.2d 920, 931 (E.D. Mich. 2005).  The failure to account for moderate

deficiencies in concentration, persistence, or pace in the hypothetical question can

constitute reversible error.  However, the evidence of record and the ALJ's

opinion must be considered in their entirety in determining whether the

hypothetical limitations adequately describe the claimant's limitations.  *Schalk v.*

*Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D. Mich. 2011) ("no

bright-line rule" that moderate concentrational deficiencies require the inclusion

of certain hypothetical limitations), citing *Hess v. Comm'r of Soc. Sec.*, 2008 WL

2478325, at *7 (E.D. Mich. 2008); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL

3905375, at *3 (E.D. Mich. 2010) (distinguishing *Edwards* and holding that

"[d]ecisions in this district reflect the conclusion that a moderate impairment in

concentration, persistence, and pace does not necessarily preclude simple, routine,

unskilled work").  Thus, "there is no bright-line rule requiring remand whenever

an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a

moderate limitation in concentration.  Rather, this Court must look at the record as

a whole and determine if substantial evidence supports the ALJ's decision."

*Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. 2011),

*adopted by* 2011 WL 2682892 (E.D. Mich. J2011).  Further, an ALJ is not

required to include the phrase "moderate deficiencies in concentration,

persistence, and pace" or other talismatic language in the hypothetical.  *Smith v.*

*Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Plaintiff contends however that because the consulting examiners did not

conclude that plaintiff had both a moderate limitation and, at the same time, was

capable of unskilled work, the ALJ was somehow precluded from reaching this

determination.  Plaintiff cites no authority for this novel proposition and the

undersigned does not read the cases cited above so narrowly.  To apply such a

narrow construction would be contrary to the Court's obligation to look at the record as a whole to determine whether the ALJ's decision is supported by substantial evidence. *See Taylor*, *supra*. And again, plaintiff points to no treating source that found plaintiff to be more limited than as found by the ALJ.

       4.     Step five

Given the foregoing conclusions that the ALJ's RFC is supported by substantial evidence, the undersigned also concludes that there was no error at step five.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**..

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 19, 2014                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Mortzfield v. Comm'r*; Case No. 12-15270

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on <u>February 19, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kiel J. Roeschke, Lynn Marie Dodge, AUSA, Marc Boxerman and the Commissioner of Social Security</u>.

s/Tammy Hallwood      
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Mortzfield v. Comm'r*; Case No. 12-15270
